OPINION OF THE COURT
Michael J. Dontzin, J.
 The petitioner in this CPLR article 78 proceeding is a New York City fireman who seeks an order: (1) vacating his failing score on a promotional examination for the position of lieutenant, (2) directing the respondents to accord him a passing score, and (3) annulling the respondents’ determination which denied his claim for veteran’s preference. The petition is granted to the extent that respondents are directed to accord the petitioner a score of 72 and to credit the petitioner’s claim for veteran’s preference when his name is added to the eligible list resulting from the examinations for fire department lieutenant.
The petitioner applied to take a promotional examination that was held on October 31, 1981 but was unable to attend this examination due to a line-of-duty injury. The petitioner took a special make-up examination which was held on May 1, 1985. The petitioner filed protests to the key answers to questions 3, 6, 12, 23, 28 and 62. The Test Validation Panel considered the protests and sustained the petitioner’s protest to question 28. The passing grade for the examination was a correct score of 72%. The petitioner received a score of 71%. On May 10, the petitioner submitted a delayed claim for veteran’s preference to the respondent Department of Personnel. His claim was denied and the petitioner appealed the decision to the respondent Civil Service Commission. The decision to deny the petitioner’s claim for veteran’s preference was affirmed by the respondent Civil Service Commission.
The standard for judicial review of the petitioner’s answers is whether or not they are as good as or better than the key answers. "Petitioner is not required to show that there is no reasonable basis for the key answer selected by the commission, but merely that the answer given by the candidate on the test is better or at least as good as the key answer. Where there are two equally acceptable answers to a question, the selection of one as the correct answer must be deemed to be the result of an arbitrary decision” (Matter of Acosta v Lang, 13 NY2d 1079, 1081 [1963]). A hearing is not required since neither the petitioner nor the respondents have raised any *913 •issues of fact. The parties rely on the rules, regulations and directives of the fire department which were the source materials for the examination and which are annexed as exhibits to the papers. If no questions of fact are raised and the correctness of the key answers does not depend on the subjective judgment or practices of the fire department, then no hearing is required. (Matter of Esposito v Nadel, 93 AD2d 740 [1st Dept], affd 60 NY2d 755 [1983].)
After examining the petitioner’s challenges to questions 3, 12, 23 and 62, the court finds that the petitioner’s answers are not as good as the key answers. With respect to question 6, however, the court finds that the petitioner’s answer is as good as the key answer.
Question 6 asked the following:
"A lieutenant in command of the first hose line off the standpipe on the 19th story of a high rise building should direct the engine company chauffeur to supply the system at most nearly
"(A) 150 psi
"(B) 200 psi
(C) 250 psi
(D) 300 psi”
The key answer was (B). The petitioner’s answer was (C). The petitioner cites a fire department publication called Firefighting Procedures, Fire Operations, Volume I, Book I, which is listed as a primary source for the promotional examination. In section 6.1.1 which deals with fighting fires in high-rise apartment houses it states: "Use the elevator to the floor below the fire. Stretch from the standpipe outlet on the floor below the fire. Make all hose and nozzle connections on the floor below the fire and then advance hose to the fire floor.”
The petitioner also cites Firefighting Procedures, Engine Company Operations, Volume II, Book I, § 4.13.6 (B) (1), selected from another of the primary sources listed for the examination, which states: "Hose should be hooked up to the outlet on the floor below fire as shown in figure # 11.” The fire department relies on the next subsection which states: "In buildings of fireproof construction, hose lines may be operated from outlets in enclosed stairways of fire towers on the same floor as fire.” It seems therefore that while one may use a standpipe on the same floor as the fire, the general rule in fighting fires is to use the standpipe on the floor below the fire. The petitioner’s conclusion that the fire was on the 20th floor was an assumption as good as or better than the one presupposed by the fire department’s key answer to the question. *914 After having made this analysis, a candidate must still determine the appropriate pump pressure. A chart of recommended pump pressure which is affixed to the pumper control panel advises as follows:
Fire Floors Recommended Pump Pressures
Controlling Nozzle Fog Nozzle
Floors 1 to 10 150 p.s.i. 200 p.s.i.
Floors 10 to 20 200 p.s.i. 250 p.s.i.
Floors 20 to 30 250 p.s.i. 300 p.s.i.
The respondents contend that question 6 tests the candidate’s knowledge that there is a difference between pressure recommended for use with a controlling nozzle and with a fog nozzle. However, considering that both 200 p.s.i. and 250 p.s.i. are recommended when using a controlling nozzle to fight a fire on the 20th floor, the petitioner’s answer is as good as the key answer.
The second cause of action is based on Civil Service Law § 85 (3) which states as follows: "Any candidate, believing himself entitled to additional credit in a competitive examination as provided herein, may make application for such additional credit at any time between the date of his application for examination and the date of the establishment of the resulting eligible list.”
The petitioner filed his claim for veteran’s preference on May 10, 1985, 10 days after taking the special make-up examination. The respondents contend that the petitioner did not make his claim for veteran’s credit until after the eligible list was established. They maintain that only one eligible list was established as a result of the October 31, 1981 exam and the May 1, 1985 special make-up exam and that this single eligible list was established on August 2, 1982.
It is obviously not possible to establish a list on August 2, 1982 which will incorporate the results of a May 1, 1985 special make-up examination. Consequently, the eligible list cannot be established, insofar as it concerns the candidates who took the make-up examination, until after the make-up examination has taken place. The petitioner should have the same opportunity as those who took the regular examination to appraise his performance in the days following the examination and then make his claim for veteran’s preference. His claim should be allowed since it was made before the date when the names of those who passed the make-up examination were added to the eligible list.
*915 Accordingly, the respondents are directed to accord the petitioner a score of 72% and to credit his claim for veteran’s preference.